358 S.E.2d 833

**Tammy Denise ISAACS**

v.

**Timothy ISAACS.**

**No. 16993.**

Supreme Court of Appeals of West Virginia.

July 1, 1987.

W. Bernard Smith, Oakley, Smith & Walker, Logan, for appellant.

Charles T. Bailey, Bailey & Wagner, Logan, for appellee.

PER CURIAM:

This is an appeal by Tammy Denise Isaacs from a divorce order entered by the Circuit Court of Logan County on February 11, 1985. The appellant's principal assertion is that the trial court erred in awarding her former husband custody of the couple's infant child. After examining the record we conclude that the trial court did err in making the custody award, and we reverse the circuit court's ruling on that point.

The appellant sued her husband, Timothy Isaacs, for divorce on August 12, 1983, on

the ground of mental cruelty and irreconcilable differences. At a preliminary hearing conducted in the case on September 15, 1983, the parties agreed that the appellant should have temporary custody of their three-year-old child, Ashley Nicole Isaacs. It was also agreed that the appellant would receive temporary child support, and that Timothy Isaacs would have reasonable visitation rights.

At a hearing conducted approximately a year later, on August 3, 1984, the court granted the parties leave to file amended pleadings. Pursuant to the leave, the appellant filed an amended complaint setting forth as an additional ground for divorce the fact that the parties had lived separate and apart without cohabitation for one year. Her husband filed an answer to the amended complaint on August 14, 1984. In that answer he asserted that the appellant had been guilty of adultery. Final hearings were conducted in the case on August 15, 1984, and on September 11, 1984.

At the conclusion of the hearings, the trial judge made specific findings of fact. Among other things, he found that the appellant had been guilty of adultery with Ray Stacy during the marriage within three years prior to the filing of the action, and he also found that the adultery had not been condoned by the appellant's husband. The court noted that the husband had not been guilty of inequitable conduct toward the appellant which contributed to the appellant's misconduct or which would extenuate or mitigate the misconduct. The court also found that the parties had lived separate and apart for at least one year prior to the filing of the amended complaint, and that Timothy Isaacs had not been guilty of cruel and inhuman treatment.

Regarding the custody of the parties' infant child, the court noted that neither party had been the primary caretaker of the child and that Imogene Wilbur, the appellant's mother, had been the primary caretaker since the child's birth. The court indicated that with regard to the respective character conduct, habits, associations and attitudes of the parties, the appellant's husband was better suited to have custody of

the infant child and that the husband was physically, emotionally and otherwise capable of rearing the child in a moral and proper fashion and that he could provide the child with a proper and suitable home and proper and suitable environment. The court concluded that the best interests of the infant would be served by placing her in the custody of the father.

In reaching the conclusion that the appellant's husband was better suited to rear the child, the trial judge was apparently affected by the evidence of the appellant's infidelity, for the judge specifically stated in his order:

> While the welfare of the child is the paramount consideration, it is equally true that the legal rights of the parents will be respected. Where parents are divorced because of the marital misconduct of one of them, as a general rule, the law favors the innocent spouse in awarding the custody of the children.

In the final decree in the case, entered on February 11, 1985, the judge reiterated his prior findings and awarded Timothy Isaacs a divorce. He also granted him custody of the parties' infant child.

On appeal the appellant's principal assertion is that the trial court erred in awarding her former husband custody of the couple's infant child.

In *Garska v. McCoy*, 167 W.Va. 59, 278 S.E.2d 357 (1981), this Court stated rules which should be followed in determining custody questions relating to very young children. In syllabus point 2 of *Garska v. McCoy*, the Court said:

> With reference to the custody of very young children, the law presumes that it is in the best interests of such children to be placed in the custody of their primary caretaker, if he or she is fit.

In syllabus point 3 the Court defined a primary caretaker:

> The primary caretaker is that natural or adoptive parent who, until the initiation of divorce proceedings, has been primarily responsible for the caring and nurturing of the child.

In recent decisions the Court has indicated that not all acts of sexual misconduct by a mother should be considered as factors going to her fitness to have custody of her minor child. As stated in syllabus point 4 of *J.B. v. A.B.*, 161 W.Va. 332, 242 S.E.2d 248 (1978):

> Acts of sexual misconduct by a mother, albeit wrongs against an innocent spouse, may not be considered as evidence going to the fitness of the mother for child custody unless her conduct is so aggravated, given contemporary moral standards, that reasonable men would find that her immorality, *per se*, warranted a finding of unfitness because of the deleterious effect upon the child of being raised by a mother with such a defective character.

In the *J.B.* case the evidence tended to demonstrate that the mother of an infant child committed a sexual act in a car parked in downtown Martinsburg. Other evidence in the case, however, demonstrated that the mother was a perfectly fit babysitter for the child, that she took good care of the child, and that she loved her child. In examining the circumstances, the Court concluded that the mother's sexual conduct, while constituting a wrong against her husband, was totally unrelated to her relationship with her child. In noting that the award of child custody should not be an exercise in punishment of an offending spouse, the Court concluded that unless the mother's sexual indiscretions were so outrageous as to cast aspersions on her capacity to care for and raise children, the misconduct should not be considered by the trial judge as relevant to the issue of whether the mother was fit to have custody of the child.

It appears to the Court that in the case presently under consideration the circuit judge was particularly concerned with the appellant's apparent sexual misconduct when he made the custody award under consideration. The evidence introduced during trial failed to show that that misconduct was any more egregious than than in the *J.B.* case or that it had a more deleterious effect upon the child. Nevertheless, the trial judge, in his order, specifically stated: "Where parents are divorced because of the marital misconduct of one of them, as a general rule, the law favors the innocent spouse in awarding the custody of the children."

We believe that in awarding custody of the infant to the appellant's former husband the trial judge did consider the evidence of the appellant's apparent sexual misconduct and was swayed by it. In so doing, this Court believes that, given the rule in *J.B. v. A.B.*, the trial judge erred.

As stated in *Garska v. McCoy*, where custody of a very young child is under consideration, the law presumes that it is in the best interest of the child to be placed in the custody of his primary caretaker.

In the case presently under consideration, the evidence shows that immediately after their marriage the appellant and her husband lived separate and apart because the appellant's husband's parents were unaware of the marriage. During that initial period the infant child was with the mother rather than with both parents. Later, after the parties began living together, both the appellant and her husband, to some certain extent, engaged in the care of the child. The appellant's mother also provided extensive babysitting services.

During the trial the appellant's father testified that, as between the parents, the appellant cared more for the needs of the child than did the appellant's husband. The appellant's husband contradicted this evidence and indicated that the parties equally cared for the child. The appellant's mother, on the other hand, testified that when she, the appellant, and the appellant's husband were all present, the appellant was the primary caretaker of the child. She also said that the appellant's husband was afraid of the child when it was small and indicated that he left the care of it to the appellant. There is also evidence that the appellant was the one who took the child to the appellant's mother for babysitting and retrieved it at the end of the babysitting sessions.

After reviewing the totality of the evidence, this Court believes that, as between the appellant and her former husband, the evidence shows that the appellant has been the primary caretaker of the child. Also, the Court believes that the totality of the evidence shows that the mother is a fit person to have custody of the child, in spite of suggestions of sexual misconduct on her part.

In view of the rule that the law presumes that it is in the best interest of very young children that they be placed in the custody of their primary caretaker, this Court believes that the evidence demonstrates that the young Isaacs child should be placed in the custody of the appellant, and that the trial court erred in awarding the custody to the appellant's husband.

For the reasons stated, the judgment of the Circuit Court of Logan County is reversed, and this case is remanded for further proceedings consistent with the principles set forth in this opinion.

Reversed and remanded.